# Supreme Court of Texas

———

No. 22-1167

———

In re Richardson Motorsports, Ltd.,
*Relator*

———

On Petition for Writ of Mandamus

———

**Argued January 30, 2024**

JUSTICE BUSBY delivered the opinion of the Court.

In this mandamus proceeding, we address whether Texas Rules of Evidence 509(e)(4) and 510(d)(5) apply to a discovery request for a minor plaintiff's psychological treatment records. These rules provide an exception to the privileges against disclosure of medical and mental health care treatment records if "any party relies on the patient's physical, mental, or emotional condition as a part of the party's claim or defense and the communication or record is relevant to that condition." TEX. R. EVID. 509(e)(4), 510(d)(5).

In the underlying suit, real party in interest E.B. seeks damages for the alleged mental anguish she suffered from watching her younger brother be crushed to death by an ATV. Relator Richardson Motorsports, which sold the ATV, subpoenaed "all of [E.B.'s]

psychological treatment records" from E.B.'s clinical psychologist and pediatrician beginning three years after the accident. The principal issue in this proceeding is whether E.B.'s mental or emotional condition is part of either her negligence claim for mental anguish damages as a bystander or Richardson's defense that post-accident causes contributed to E.B.'s anguish, thus making her psychological records discoverable under the privilege exceptions.

We conclude that E.B.'s mental or emotional condition is part of her claim because she is relying on expert testimony about that condition to prove her mental anguish damages, and it is also part of Richardson's defense that those damages have alternative causes. Thus, discovery of E.B.'s mental health care treatment records relevant to the claim or defense is not foreclosed by privilege. We therefore conditionally grant mandamus relief and direct the court of appeals to withdraw its mandamus order preventing discovery. We also note that discovery of some records may be permitted on privilege-waiver grounds and further trial court proceedings are necessary to determine which parts of the records are not privileged under each rule.

### BACKGROUND

In 2013, Richardson Motorsports, Ltd., sold a Can-Am Commander 1000 XT ATV to E.B.'s Father. The ATV had four wheels, two seats, a metal roll cage around the occupants, and a cargo bed in the rear. The ATV was designed, manufactured, and marketed by Bombardier Recreational Products, Inc. At the time of sale, Richardson allegedly removed the ATV's door netting, which is designed to protect the occupants in the event the ATV rolls over during an accident.

2

In 2016, Bombardier recalled the ATV's steering mechanism and sent a notice of recall to its dealers across the nation. Richardson allegedly failed to inform Father of the recall. In August 2016, Father brought the ATV to Freedom Powersports, LLC, for general maintenance. Freedom Powersports allegedly did not inform Father of the recall either and neglected to perform necessary safety repairs to the recalled parts.

Two months later, Father was driving the ATV with his ten-year-old daughter E.B. and his eight-year-old son C.A.B. as unrestrained passengers sitting in the same seat. As the family was riding, the ATV's recalled steering mechanism allegedly malfunctioned, and the vehicle rolled over. C.A.B. became trapped under the vehicle and was tragically crushed to death. Father and E.B. suffered physical injuries and contemporaneously witnessed C.A.B.'s prolonged suffering and death.

E.B.'s Father and Mother, E.B. herself (represented by her parents as next friends), and her brother's estate sued Bombardier, Richardson, and Freedom. As to Richardson, E.B. alleges that it negligently removed the ATV's door netting and seeks damages for the alleged mental anguish she suffered from witnessing her brother's death. Richardson answered that E.B.'s damages resulted from new and independent causes not reasonably foreseeable by Richardson. It specifically asserts that E.B.'s anguish was caused in whole or part by E.B.'s parents' divorce, E.B.'s estrangement from Mother, and alleged sexual abuse of E.B. by her stepfather.

In October 2021, Richardson issued notices of intent to take depositions by written questions and subpoenas duces tecum to (as

relevant here) Doctors Kittay and Rani, E.B.'s clinical psychologist and pediatrician. Richardson requested "all psychological treatment records" pertaining to E.B. from November 2019 (for Kittay) or December 2019 (for Rani) to the present. Richardson also subpoenaed Mother's psychological records. E.B. and Mother filed motions to quash, arguing first that Richardson's request was overbroad because it includes "all psychological treatment records," and second that the records are beyond the scope of permissible discovery because they are both privileged under Texas Rules of Evidence 509(c) and 510(b) and not relevant to a claim or defense. In response, Richardson argued that because E.B. "seek[s] damages for past and future mental anguish" as well as "bystander recovery," her mental condition is part of her claim against Richardson, thus making her records discoverable under the "patient-litigant exception." It also argued that E.B.'s records shed light on alternative contributing causes of her mental anguish.

During the hearing on the motions to quash, Richardson withdrew its request for Mother's records. Moving to the matter of E.B.'s records, the trial court asked E.B. how she could "justify saying that her mental health records shouldn't be discovered when [she is] making a mental anguish claim?" Counsel for E.B. responded that "routine allegations of mental anguish do not release everyone's mental health records." After an in camera review of E.B.'s records, the trial court denied E.B.'s motions to quash and ordered that all of E.B.'s requested psychological records be produced to Richardson. The court also ordered the production of Mother's records even though Richardson had withdrawn its request for those records.

4

E.B. and Mother then filed a petition for writ of mandamus in the court of appeals, which conditionally granted relief and directed the trial court to vacate its orders denying their motions to quash and requiring disclosure of the records. 655 S.W.3d 658, 676 (Tex. App.—Dallas 2022, orig. proceeding). The court of appeals held that the records are privileged and the exceptions do not apply because E.B.'s pleadings make no more than a routine claim of mental anguish. *Id.* at 672. The court recognized that E.B. failed to ask the trial court to forward the documents it inspected in camera to the appellate court under seal as she should have, but it concluded (over a dissent) that there was "a sufficient mandamus record because a review of the health care records is not critical to our determination." *Id.* at 669-670; *see id.* at 677 (Pedersen, J., dissenting). As to Mother's records, the court of appeals held that ordering their production was an abuse of discretion because it is undisputed "there was no request for them" at the time of the court's order. *Id.* at 674.

Richardson then filed a petition for writ of mandamus in this Court. Its petition focuses only on discovery of E.B.'s psychological records.

## ANALYSIS

"We review a court of appeals' issuance of a writ of mandamus for an abuse of discretion, but in doing so our focus remains on the trial court's order." *In re Christianson Air Cond. & Plumbing, LLC*, 639 S.W.3d 671, 681 (Tex. 2022). "A court of appeals may issue a writ of mandamus only if the trial court abused its discretion and there is no adequate remedy by appeal." *Id.* We begin by considering whether the

5

trial court abused its discretion in denying the motions to quash because the records are privileged, as the court of appeals held.

The privilege against disclosure of medical and mental health care treatment records does not apply "if any party relies on the patient's physical, mental, or emotional condition as a part of the party's claim or defense and the communication or record is relevant to that condition." TEX. R. EVID. 509(e)(4), 510(d)(5). We previously dubbed these exceptions the "patient-litigant exceptions," but their language was later broadened by amendment. We conclude that "patient-condition exceptions" is a more accurate shorthand reference because the patient need not be a litigant and, even if she is, the claim or defense to which the records are relevant need not be her own. *See* STEVEN GOODE & OLIN GUY WELLBORN III, 1 TEX. PRAC. SERIES: GUIDE TO THE TEXAS RULES OF EVIDENCE § 510.5 (4th ed. updated 2023).

This case requires us to determine when a party is relying on a patient's mental or emotional condition as part of a claim for or defense to mental anguish damages. To recover such damages, a plaintiff must provide "evidence of the nature, duration, and severity of [her] mental anguish."[1] But we have not required that proof of anguish take the form of expert testimony about a particular mental or emotional condition; proof can come from "the claimants' own testimony, that of third parties, or that of experts." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.

---

[1] *Gregory v. Chohan*, 670 S.W.3d 546, 554 (Tex. 2023) (plurality op.) (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)); *see also id.* at 572-73 (Devine, J., concurring) ("Of course, the jury's decision must be based on evidence of the nature, duration, and severity of the claimant's suffering—and it cannot be based on noncompensatory motivations.").

6

1995). And we have recognized that an "allegation of mental anguish or emotional distress [alone] does not place the party's mental condition in controversy,"[2] though a plaintiff may do so in other ways—for example, by asserting a mental injury that "exceeds the common emotional reaction to an injury or loss." *Coates v. Whittington*, 758 S.W.2d 749, 753 (Tex. 1988). We have held that post-traumatic stress disorder is an example of an injury that places the plaintiff's mental or emotional condition in issue. *See Groves v. Gabriel*, 874 S.W.2d 660, 661 (Tex. 1994).

Richardson offers three arguments to support its position that the requested records relate to E.B.'s mental or emotional condition that is part of a claim or defense, and thus the privilege exceptions apply. First, it contends that "shock" is a mental or emotional condition exceeding mental anguish that must be found by the jury as an element of E.B.'s bystander claim. Second, Richardson asserts that E.B. is relying on her mental or emotional condition to prove her mental anguish damages, as shown by designating her treating psychologist and pediatrician as testifying experts. Third, Richardson argues that E.B.'s mental or

---

[2] *Coates v. Whittington*, 758 S.W.2d 749, 753 (Tex. 1988); *see also In re Whipple*, 373 S.W.3d 119, 123 (Tex. App.—San Antonio 2012, orig. proceeding); *In re Toyota Motor Corp.*, 191 S.W.3d 498, 502 (Tex. App.—Waco 2006, orig. proceeding); *In re Nance*, 143 S.W.3d 506, 512 (Tex. App.—Austin 2004, orig. proceeding); *In re Doe*, 22 S.W.3d 601, 610 (Tex. App.—Austin 2000, orig. proceeding); *In re Williams*, No. 10-08-00364-CV, 2009 WL 540961, at *6 (Tex. App.—Waco Mar. 4, 2009, orig. proceeding); *In re Pennington*, No. 2-08-233-CV, 2008 WL 2780660, at *4 (Tex. App.—Fort Worth July 16, 2008, orig. proceeding); *In re Chambers*, No. 03-02-00180-CV, 2002 WL 1378132, at *4 (Tex. App.—Austin June 27, 2002, orig. proceeding); *C&L Flooring Installations v. Cochell*, No. 05-98-01919-CV, 2001 WL 915223 (Tex. App.—Dallas Aug. 15, 2001, no pet.).

emotional condition is part of its defense that E.B.'s mental anguish was caused in whole or part by post-accident intervening, superseding, or contributing causes. We address each argument in turn.

## I. "Shock" exceeding mental anguish is not a mental or emotional condition that must be found by a jury in a bystander case.

"A bystander may recover mental anguish damages under Texas law after witnessing a close relative suffer a traumatic injury because of a defendant's negligent action." *Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 80 (Tex. 1997). In *Freeman v. City of Pasadena*, we adopted three factors to help courts gauge whether a defendant can reasonably foresee injury to a bystander. 744 S.W.2d 923, 923-24 (Tex. 1988) (adopting foreseeability factors from *Dillon v. Legg*, 441 P.2d 912, 920 (Cal. 1968)). A decade later, we reiterated that for a plaintiff to recover as a bystander, the court must determine that:

(1) The plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it;

(2) The plaintiff suffered shock as a result of a direct emotional impact upon the plaintiff from a sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and

(3) The plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*United Servs. Auto. Ass'n v. Keith*, 970 S.W.2d 540, 542 (Tex. 1998).

Richardson does not dispute that E.B. meets the first and third factors. But Richardson challenges whether the emotional impact on

8

E.B. from contemporaneously observing her brother's death rose to the level of "shock." In Richardson's view, "shock" is a mental or emotional condition that courts in other states have characterized as exceeding mental anguish, and that condition is part of E.B.'s claim because "the jury must make a factual determination concerning the condition itself." *R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994). Thus, Richardson contends, the patient-condition exceptions permit discovery of records relevant to that condition.

We reject Richardson's argument for two reasons. First, "shock" is not a distinct factual element of liability that a jury must find in bystander cases. Instead, it is a foreseeability factor that bears on the legal question whether the defendant owes the plaintiff a duty of reasonable care. *Freeman*, 744 S.W.2d at 923-24 (explaining that three factors guide the "determin[ation] whether the accident and harm was reasonably foreseeable" and thus "whether defendant owes plaintiff a duty of due care"); *Kaufman v. Miller*, 414 S.W.2d 164, 168 (Tex. 1967) (describing traditional notions of foreseeability and duty as important limitations on bystander recovery); *see Keith*, 970 S.W.2d at 542 ("[W]hen the material facts are undisputed, as they are here, whether the plaintiff is entitled to recover as a bystander is a question of law.").[3]

_____

[3] *See also City of Tyler v. Likes*, 962 S.W.2d 489, 495-96 (Tex. 1997) ("[T]here are some categories of cases in which the problems of foreseeability and genuineness are sufficiently mitigated that the law should allow recovery for anguish. . . . [W]e permit recovery for mental anguish in only a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result. These include suits for wrongful death . . . and actions by bystanders for a close family member's serious injury."); *Parkway Co.*, 901 S.W.2d at 442 ("[O]nce particularly disturbing events were

9

The reasons underlying our decision to allow bystander recovery instead of recognizing a broader claim for negligent infliction of emotional distress support this understanding of shock as a component of the legal duty analysis. We permit recovery of mental anguish damages without an accompanying physical manifestation in "cases of intentional torts, gross negligence, or a willful and wanton disregard for another's rights" or when "the nature of the tort alleged assures courts of the genuineness of mental anguish claims, even without resort to proof of physical manifestation." *Moore v. Lillebo*, 722 S.W.2d 683, 685 (Tex. 1986). Because bystanders can recover damages for mental anguish only "after witnessing a close relative suffer a traumatic injury because of a defendant's negligent action," their claims often carry that assurance. *See Edinburg Hosp. Auth.*, 941 S.W.2d at 80 (observing that bystander may recover for mental anguish in cases of "serious or fatal injury"). But a defendant is liable for those damages only "because we recognize that there are certain situations in which a tortfeasor will owe a bystander a duty of care beyond that owed to the public in general." *Id.*

---

proved by reference to objective phenomena or conditions, the law generally allowed the claimant's mental suffering to be presumed to flow from such events."); *Carey v. Pure Distrib. Corp.*, 124 S.W.2d 847, 849 (Tex. 1939) (defendant who knew its truck's sideboard fastener was defective should have foreseen cans of oil would be thrown off the truck, hitting others nearby, but bystander's miscarriage after witnessing someone hit by a can was not a foreseeable type of injury); *Landreth v. Reed*, 570 S.W.2d 486, 489 (Tex. App.—Texarkana 1978, no writ) (bystander recovery for negligent infliction of emotional distress is "determined upon the traditional concepts of negligence and proximate cause based upon reasonable foreseeability").

The three factors—including shock—help courts evaluate this duty question: whether it would be reasonably foreseeable to a negligent defendant that someone in the bystander-plaintiff's position would suffer mental anguish as a result of the defendant's negligence. *Freeman*, 744 S.W.2d at 924 (applying factors to determine whether accident and harm were reasonably foreseeable).[4] Thus, "shock" is not a distinct mental or emotional condition about which a jury must make a factual determination in bystander cases. Instead, the shock factor directs courts to distinguish between a plaintiff who suffered a direct emotional impact from contemporaneously observing an accident and a plaintiff who learned of it later. As explained above, asserting a direct emotional impact and seeking damages for mental anguish alone does not place a plaintiff's mental condition in controversy. *Coates*, 758 S.W.2d at 753. If a court applying these factors determines that a duty is owed, the plaintiff must prove the nature, duration, and severity of her mental anguish to recover damages as in any other case.

Second, even if "shock" were a distinct condition, Richardson is incorrect that the records it requested from late 2019 to the present are relevant to E.B.'s mental condition at the time of her brother's death in 2016. *See* TEX. R. EVID. 509(e)(4), 510(d)(5) (requested "communication or record" must be "relevant to th[e] condition"). Medical or mental health care records will be relevant to a mental condition at issue when

---

[4] *See generally Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010) ("Whether a duty exists is a question of law for the court and turns on a legal analysis balancing a number of factors, including the risk, foreseeability, and likelihood of injury . . . ." (internal quotation marks omitted)).

11

the condition is "so central as to require the jury, as part of its determination of the claim or defense, to 'make a factual determination concerning the condition [itself]'" as it existed at the time the bystander-plaintiff experienced the allegedly shocking, traumatic event. *In re Morgan*, 507 S.W.3d 400, 404 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding) (quoting *R.K.*, 887 S.W.2d at 843). Richardson does not explain how records from three or more years after the accident are relevant to whether the accident had a direct emotional impact on E.B.

For these reasons, we reject Richardson's position that its request for E.B.'s psychological records beginning in late 2019 falls within the patient-condition exceptions on the ground that the records are relevant to whether E.B. suffered a mental condition of "shock" when witnessing the tragedy years earlier that must be found by a jury. Because this position provides no basis for concluding that the court of appeals erred in granting mandamus relief from the trial court's discovery order, we turn to Richardson's other arguments.

## II. E.B. is relying on her mental or emotional condition to prove mental anguish damages.

Richardson next contends that the patient-condition exceptions apply because E.B. designated her treating psychologist and pediatrician as testifying experts, which shows that her mental or emotional condition carries legal significance and relevance. Richardson points to *R.K.*, in which we explained that a patient's mental health care records are subject to discovery if a legal consequence flows from the patient's mental or emotional condition, but not if that condition is an evidentiary or intermediate issue of fact or merely tangential to a claim.

887 S.W.2d at 842-43. E.B.'s own choice to designate her treating psychologist and pediatrician as testifying experts, Richardson argues, demonstrates that her mental condition is central to her claim rather than tangential to it.

The court of appeals disagreed, concluding from the pleadings that "E.B. has made nothing more than a pedestrian request for mental anguish damages of the kind that ordinarily would flow from her injury in the vehicle rollover accident and her contemporaneous perception of her brother's death." 655 S.W.3d at 672. The court noted that because routine allegations of mental anguish do not make a plaintiff's mental condition a part of her claim, E.B.'s mental anguish carries no legal significance, which "ends the inquiry in considering the patient-[condition] exception to rules of evidence 509 and 510." *Id.* at 672-73. It did not address the impact of E.B.'s expert designations on the applicability of the exceptions, concluding only that the designations were not a waiver of privilege by offensive use. *Id.* at 675.[5] In this Court, E.B. further argues that the expert designations do not change the analysis because she no longer intends to call them at trial.

We agree with Richardson. As explained above, Texas courts have not required plaintiffs to provide expert testimony to recover on a

---

[5] In some cases where a plaintiff alleges mental anguish damages and seeks to prove them with expert medical or psychological testimony, the experts' records might be discoverable under the offensive-use doctrine. But Richardson has disclaimed that doctrine as a basis for avoiding the privilege in this case, and in any event its requirements do not appear to be met here because Richardson does not explain how the failure to disclose E.B.'s records "would be outcome determinative of the cause of action asserted." *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993) (outlining factors for determining whether offensive-use doctrine applies).

13

negligence claim seeking mental anguish damages. *See Parkway Co.*, 901 S.W.2d at 444. But a plaintiff who consults a physician or other professional for the "diagnosis, evaluation, or treatment of [a] mental or emotional condition" can make that condition "part of [her] claim" by "relying on" it to help prove her mental anguish. TEX. R. EVID. 510(a)(2)(A), (b)(1)(B), (d)(5); *see id.* R. 509(c)(2), (e)(4). In such cases, treatment records "relevant to th[e] condition" are discoverable, *id.* R. 509(e)(4), 510(d)(5)—not as a matter of offensive-use waiver, but under the terms of the exceptions themselves. *See R.K.*, 887 S.W.2d at 841 ("[T]he offensive use doctrine is independent from and unrelated to the privilege exception . . . stated in Rules 509(d)(4) and 510(d)(5).").[6]

Here, E.B. designated her psychologist and pediatrician, Drs. Kittay and Rani, as expert witnesses who "will testify regarding the injuries sustained by [E.B.] as well as the cause of those injuries, and the medical treatment provided to treat those injuries." Because this designation shows that she is relying on their diagnosis, evaluation, or treatment of her condition as a part of her claim, she cannot invoke the privilege to shield their mental health care records relevant to that condition from discovery. E.B.'s mental condition is "tied in a

---

[6] Similarly, discovery available under the exceptions is independent of discovery from testifying experts allowed by Texas Rule of Civil Procedure 192.3(e). *See generally In re City of Dickinson*, 568 S.W.3d 642, 646 (Tex. 2019) (addressing interplay of privilege rule and expert-discovery rule). Our record does not reveal a request for discovery under Rule 192.3(e), which may be obtained "only by oral deposition of the expert and by a report prepared by the expert." TEX. R. CIV. P. 195.4; *see In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 814 (Tex. 2017) ("Importantly, a party is limited in the tools available to discover information concerning expert witnesses, even though the information may otherwise be within the scope of testifying-expert discovery.").

meaningful way to the legal consequences of [her] claim" through her choice to use Drs. Kittay and Rani as testifying experts. *R.K.*, 887 S.W.2d at 842. Several decisions support this conclusion.

In *Coates*, we observed that a party's mental condition is not in controversy when the party "has not sought any type of psychiatric treatment as a result of the incident and, equally important, does not propose to offer psychiatric or psychological testimony to prove mental anguish at trial." 758 S.W.2d at 752.[7] And *Midkiff v. Shaver* addressed how this observation applies to the privilege exceptions at issue here. 788 S.W.2d 399, 402-03 (Tex. App.—Amarillo 1990, orig. proceeding). The *Midkiff* court explained that although the plaintiff's allegation of mental anguish itself did not place her mental condition in issue, she had "sought medical attention for some of the symptoms of her mental anguish" and for "physical manifestations" of her mental anguish, thereby establishing "a connection . . . between her mental anguish complaint and the medical attention she sought." *Id.* Thus, "so long as she seeks damages by relying upon the symptoms of mental anguish for which she sought medical attention" and "pursue[s] [her] claim for mental anguish with the described physical manifestations," she

---

[7] *See also Laub v. Millard*, 925 S.W.2d 363, 365 (Tex. App.—Houston [1st Dist.] 1996, orig. proceeding) ("Because [plaintiff] intends to use expert medical testimony from Dr[s]. Pesikoff and Justice to prove her alleged incompetence, she has placed her mental condition in controversy."); *In re Transwestern Publ'g Co., L.L.C.*, 96 S.W.3d 501, 507 (Tex. App.—Fort Worth 2002, orig. proceeding) (holding nature of discovery responses and designations of treating experts made "mental anguish a central issue in the case"); *In re Doe*, 22 S.W.3d at 606 (distinguishing between emotional distress accompanying personal injury and mental condition warranting psychological evaluation).

15

"cannot use her invoked privileges as a shield to prevent discovery of medical and mental health records related to" those conditions. *Id.*

Many federal courts agree that mental health care records are discoverable when the plaintiff "take[s] the affirmative step in the litigation to place his diagnosis or treatment in issue, by offering evidence of psychiatric treatment or medical expert testimony to establish his claim of emotional harm." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 474-75 (N.D. Tex. 2005) (explaining view that mental diagnosis is in issue when plaintiff offers evidence of psychiatric treatment or medical expert testimony to establish emotional harm).[8] We note, however, that this analysis typically applies only to conditions that follow or could have arisen from the occurrence at issue; the existence or treatment of pre-existing mental or emotional conditions usually is not part of a claim or defense for purposes of the patient-condition exceptions.[9]

---

[8] *See also Fitzgerald v. Cassil*, 216 F.R.D. 632, 638-39 (N.D. Cal. 2003) (holding privilege was maintained due to plaintiff's proper stipulation that he would not rely on any treating provider to prove emotional distress); *Adams v. Ardcor*, 196 F.R.D. 339, 343 (E.D. Wis. 2000) ("[A] party cannot inject her psychological treatment, conditions or symptoms into a case and expect to be able to prevent discovery of information relevant to those issues."); *Hucko v. City of Oak Forest*, 185 F.R.D. 526, 529 (N.D. Ill. 1999) (holding records discoverable when plaintiff takes "affirmative step in the litigation" to place emotional harm in issue); *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 230 (D. Mass. 1997) (explaining records are no longer privileged if plaintiff "use[s] the substance of her communication, by calling her psychotherapist as a witness, for example, or by testifying to the substance of the communication herself").

[9] *See Coates*, 758 S.W.2d at 752 ("Mrs. Coates' prior problems are clearly peripheral to the issues in this case, and, consequently, they are not 'in controversy.' . . . Mrs. Coates' prior problems and attendant complaints of

We are aware of E.B.'s statements that she no longer intends to rely on Drs. Kittay and Rani to prove that her mental anguish stems from a mental or emotional condition for which they have treated her. But the rules provide that "[a]n amended or supplemental response must be in the same form as the initial response." Tᴇx. R. Cɪᴠ. P. 193.5(b). The record before us does not disclose that E.B. amended or supplemented her designation to remove her treating providers as testifying experts. Thus, E.B.'s designation is the type of "affirmative step in the litigation" that "place[s] h[er] diagnosis or treatment in issue." *Merrill*, 227 F.R.D. at 475.

Finally, Richardson asserts that the court of appeals should not even have reached the question whether the patient-condition exceptions apply because E.B.—as relator in the court of appeals—did not provide a full mandamus record by requesting that the trial court forward the documents it inspected in camera to the court of appeals under seal. *See* Tᴇx. R. Aᴘᴘ. P. 57.2(a)(1) (placing burden on relator to file with petition "a certified or sworn copy of every document that is material to the relator's claim for relief and that was filed in any underlying proceeding"). Although we agree it was E.B.'s obligation to do so, any uncertainty regarding the records inspected in camera does

---

depression are distinct from the mental anguish she claims as a result of her injury."); *Nance*, 143 S.W.3d at 512 ("The fact that a plaintiff had past mental problems is distinct from the mental anguish associated with a personal injury or loss; a tortfeasor takes a plaintiff as he finds him or her."); *Chambers*, 2002 WL 1378132, at *4 ("That the plaintiff had past mental problems or complaints of depression is 'peripheral' to determining what is 'in controversy.'").

not affect our holding that E.B.'s expert designations show she is relying on her condition as part of her claim.

For these reasons, the trial court did not abuse its discretion in ordering production of records regarding E.B.'s mental or emotional condition insofar as they are relevant to her claim for mental-anguish damages, and the court of appeals erred in concluding that those records were privileged.[10]  *See Christianson*, 639 S.W.3d at 681 ("If the trial court did not abuse its discretion, then the court of appeals erred in granting mandamus relief.").  Because of its holding, the court of appeals did not reach E.B.'s arguments that the ordered production was overly broad because it included records irrelevant to that claim and did not permit redaction of irrelevant portions of records that do contain some relevant information.  We address the scope of production in Part IV below.

## III.   Richardson is relying on E.B.'s mental or emotional condition as part of its defense that her anguish had post-accident causes.

Richardson next argues that E.B.'s mental condition is part of its defense because it alleged in its answer that her mental anguish damages were caused by post-accident "intervening, superseding, sole,

---

[10] As explained in Part IV below, the trial court will be conducting further proceedings to determine the proper scope of production.  The parties have not addressed, and we do not decide, whether the same portions of E.B.'s records would remain relevant and discoverable under this theory if she were to amend her petition to alter the time period for which she seeks mental anguish damages or amend her designation to remove her providers as testifying experts prior to the court's ruling.  Nor do we decide whether the same portions of her records are relevant and discoverable under other theories discussed elsewhere in this opinion.

18

and/or new and independent causes." It specifically asserts that E.B.'s mental anguish was caused in whole or part by E.B.'s parents' divorce, E.B.'s estrangement from Mother, and alleged sexual abuse of E.B. by her stepfather. Richardson explains that the post-accident alternative causes are relevant to its defense because the jury could attribute at least "some of E.B.'s mental or emotional distress to one or more of these causes" and award a reduced amount of damages. Although Richardson raised this argument in the court of appeals, that court did not address it.

E.B. responds by arguing that a patient's mental condition is only of "legal consequence" under *R.K.* when the condition is outcome determinative of liability—that is, caused the injury—or when it exceeds the common emotional reaction to a tragic event. She reasons that any post-accident anguish attributable to third parties is not a fact of legal significance but an inferential rebuttal issue, so her records remain privileged.

A trial court confronted with such arguments regarding whether a patient's mental condition is part of a party's defense should begin by examining the pleadings and then, if necessary, consider the allegedly privileged records. More specifically, when a party raises a patient-condition exception as a basis for discovering allegedly privileged records, disputed questions for the trial court to consider may include: (1) whether the patient consulted a physician or other professional and claims that the records of that consultation are privileged, thus indicating that the "diagnosis, evaluation, or treatment" of a "physical, mental, or emotional condition" or "disorder" may be at

issue; (2) whether the pleadings indicate that a party "relies on" such a condition as "part of" its claim or defense; and (3) whether an in camera review of the records confirms that they address such a condition and shows that the professional's records are "relevant to" the relied-upon condition. *See* TEX. R. EVID. 509(c)(2), (e)(4), 510(a)(1)(A), (b)(1)(B), (d)(5).

Regarding the second question, a court should determine from the pleadings—without referencing the allegedly privileged records—whether a condition is a part of a claim or defense. *R.K.*, 887 S.W.2d at 843. If, for example, a defendant's pleadings allege in good faith that a plaintiff's post-accident mental or emotional condition was an alternative cause of the mental anguish for which the plaintiff now seeks damages, then the plaintiff's condition will be of legal consequence to the defense as a "fact to which the substantive law assigns significance." *Id.* at 842.

As to the third question, the trial court conducts an in camera inspection to determine whether "the communication or record is relevant to" the alleged condition on which the party relies as part of its claim or defense. TEX. R. EVID. 509(e)(4), 510(d)(5). For example, if a defendant alleges that the plaintiff has mental or emotional conditions that are alternative post-accident causes of her mental anguish but the plaintiff's allegedly privileged records reveal nothing about the diagnosis, evaluation, or treatment of those particular conditions, then the records are not relevant to the conditions alleged as a defense. Similarly, if the records address the post-accident diagnosis, evaluation, or treatment of a physical, mental, or emotional condition that does not

20

correspond to the alternative causes alleged by the defendant, the records are not relevant to the condition alleged.

Applying this approach here, E.B. contends that the records of her psychological treatment by her pediatrician and clinical psychologist are privileged, which suggests that a mental or emotional condition is at issue. On the second question, Richardson alleged in its answer that E.B.'s damages "were the result of actions of third parties over whom [Richardson] did not have control" or "were caused by a new and independent cause not reasonably foreseeable by [Richardson]" that "became the immediate and efficient cause of injury." Thus, it pleaded "the defenses of Intervening Cause, New and Independent Cause, Superseding Cause and Sole Proximate/Producing Cause." Further, in its response to the motions to quash, Richardson explained that the limited evidence and records it had received to date revealed that E.B. was being seen for emotional and mental conditions unrelated to her brother's death. And as noted above, the record shows potential third-party causes of those conditions following the accident.

This defense that E.B. suffered anguish resulting from post-accident mental or emotional conditions caused by third parties makes E.B.'s mental or emotional condition "a fact to which the substantive law assigns significance" under *R.K.* because it affects E.B.'s recoverable damages. As a bystander, E.B.'s recovery is limited to compensation for mental anguish caused by witnessing her brother's death; Richardson is not liable for any anguish aggravated by mental or emotional conditions resulting from other post-accident traumas E.B. may have endured.

21

Turning to the third question, we note that the trial court has forwarded to this Court under seal the documents it reviewed in camera. Although those documents were not before the court of appeals, which thus did not address this issue, the focus of our review is "on the trial court's order." *Christianson*, 639 S.W.3d at 681. Accordingly, we have reviewed the sealed records and confirmed that some of them do involve the diagnosis, evaluation, or treatment of a post-accident mental or emotional condition that may have contributed to E.B.'s mental anguish. More than once, the records discuss psychological disorders E.B. developed due to conflicts with her mother and her parents' divorce. The records also include treatment plans and evaluative progress notes regarding those conditions.

For these reasons, we conclude that the trial court acted within its discretion in ordering discovery of records regarding E.B.'s mental or emotional condition insofar as they are relevant to Richardson's defense, and the court of appeals erred in concluding that those records were privileged. *See id.* ("If the trial court did not abuse its discretion, then the court of appeals erred in granting mandamus relief."). Because of its holding, the court of appeals did not reach E.B.'s arguments that the ordered production was overly broad because it included records irrelevant to that defense and did not permit redaction of irrelevant portions of records that contain some relevant information. We address that issue next.

## IV. Further proceedings are necessary to determine the proper scope of production.

Both Richardson and E.B. raise additional arguments regarding the proper scope of production. First, Richardson argues that E.B.'s records are discoverable because she waived the privilege by voluntary disclosure of earlier psychological treatment records. Further trial court proceedings are necessary to determine which records are discoverable under each rule on which Richardson relies.

Second, E.B. has argued that the request for production was overbroad and that the trial court failed to redact irrelevant material before ordering production—issues the court of appeals did not address given its disposition. Once the trial court determines which records include information that is not privileged under each of the rules discussed in this opinion, the parties may, if needed, seek the trial court's guidance regarding appropriate redactions of irrelevant information in those records.

### A. Any privilege covering portions of E.B.'s psychological records may have been waived.

Richardson argues that to the extent any records it requested do not fall within the patient-condition exceptions to the privileges, those privileges have been waived because E.B. permitted and complied with a co-defendant's discovery requests for her psychological treatment records from Drs. Kittay and Rani through late 2019. The court of appeals did not address this issue, and it is unclear whether it makes any difference to the bottom-line question of which parts of the records should be produced.

Privilege is waived when the privilege holder "voluntarily discloses or consents to disclosure of any significant part of the privileged matter unless such disclosure itself is privileged." TEX. R. EVID. 511(a)(1). This rule "allows a partial disclosure of privileged material to result in an implied waiver of the privilege as to additional material that has not been disclosed" if the partial disclosure represented a significant part of the privileged material. *In re Alexander*, 580 S.W.3d 858, 869 (Tex. App.—Houston [14th Dist.] 2019, orig. proceeding).

As discussed above, this Court has before it the documents that the trial court reviewed in camera. Some of those documents are dated before late 2019, suggesting they were part of the voluntary production to Richardson's co-defendant. But at oral argument, Richardson and E.B. agreed that it is unclear whether the trial court had before it all the earlier records that were produced voluntarily. Thus, the trial court could not determine—and this Court cannot review—whether the voluntarily produced records were a "significant part of the privileged matter" Richardson now seeks to discover. TEX. R. EVID. 511(a)(1).

Neither party has taken a clear position on whether any discovery of records available on a privilege-waiver theory would be broader, narrower, or the same as discovery available under the privilege exceptions addressed above. Of course, any discovery—regardless of whether privilege has been waived or an exception applies—must be "relevant" to a "claim" or "defense" under both our general discovery standard and the patient-condition exceptions, and medical-record discovery must be "reasonably related to the injuries or damages

24

asserted." TEX. R. CIV. P. 192.3(a), 194.2(b)(10); *see also* TEX. R. EVID. 509(e)(4), 510(d)(5). If Richardson believes that its privilege-waiver theory entitles it to discovery of additional portions of these records not available under our privilege-exception holdings above, it may pursue this theory in the trial court.

### B. Production must be narrowly tailored to parts of the records addressing a condition that is part of the claim or defense.

E.B. contends that Richardson's discovery request for "all psychological treatment records" from late 2019 to the present is overbroad and that the trial court abused its discretion by ordering production of all records without allowing her to redact portions not relevant to a claim or defense, which remain privileged. Once the trial court has determined which portions of the records are relevant to a mental or emotional condition that is part of E.B.'s claim of mental anguish stemming from the accident or Richardson's defense of anguish stemming from third-party causes, we agree with E.B. that, if the parties cannot reach agreement on appropriate redactions, the trial court must ensure that only relevant portions of the records are produced.[11]

Orders compelling overbroad discovery represent an abuse of discretion for which mandamus is the appropriate remedy. *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009). "[A]n overbroad discovery request is, in essence, one that seeks irrelevant information." *In re UPS*

---

[11] Whether any information produced will be admissible at trial is a separate question on which we express no opinion. *See* TEX. R. CIV. P. 192.3(a).

*Ground Freight, Inc.*, 646 S.W.3d 828, 832 (Tex. 2022).[12]   When a patient-condition exception applies because a physical, mental, or emotional condition is a "part" of a party's claim or defense, we have emphasized that courts "reviewing documents submitted *in camera . . .* must ensure" that "patient records [are] revealed only to the extent necessary to provide relevant evidence relating to the condition alleged." *R.K.*, 887 S.W.2d at 843; *see Groves*, 874 S.W.2d at 661 ("A trial court's order compelling release of medical records should be restrictively drawn so as to maintain the privilege with respect to records or communications not relevant to the underlying suit.").[13]   In addition, "[e]ven when a party seeks information that is relevant and not privileged, courts should" apply a "proportionality overlay" by "impos[ing] reasonable discovery limits, particularly when the burden or expense of the proposed discovery outweighs its likely benefit." *In re K&L Auto Crushers, LLC*, 627 S.W.3d 239, 248 (Tex. 2021) (internal quotation marks omitted).

---

[12] *See also Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (holding that "request for all documents authored by [a person] on [a general subject], without limitation as to time, place, or subject matter, is overbroad" because it is not "reasonably tailored to include only matters relevant to the case").

[13] *See also, e.g.*, *In re Scherer*, 684 S.W.3d 875, 885 (Tex. App.—Eastland 2024, orig. proceeding) (explaining that defendant narrowly tailored requests by making "clear that medical information is sought only if it is indicative of [plaintiff's] treatment for conditions, if any, which he claims to have suffered as a result of [defendant's] conduct. Thus, if [plaintiff] is not asserting a claim here regarding a particular physical or mental condition for which he has received treatment, then no information could be sought or would need to be produced.").

For these reasons, courts "should be sure that the . . . records disclosed are closely related in time and scope to the claims [and defenses], so as to avoid any unnecessary incursion into private affairs." *R.K.*, 887 S.W.2d at 843 (internal citation omitted). And "[e]ven when a document includes some information meeting this standard, any information not meeting this standard remains privileged and must be redacted or otherwise protected." *Id.*[14] For example, the trial court should allow redaction of portions of the records relevant to pre-accident conditions or physical conditions. It should also allow redaction of portions not relevant to the diagnosis, evaluation, or treatment of the particular mental or emotional conditions discussed above that are part of E.B.'s claim or Richardson's defense.[15]

## CONCLUSION

Because E.B.'s mental or emotional conditions are part of her claim and Richardson's defense, the privileges she asserts do not prevent discovery of her mental health care treatment records relevant to those conditions. We therefore conditionally grant Richardson's petition for

---

[14] *See also Republic Ins. Co.*, 856 S.W.2d at 163 n.10 ("If the communication goes beyond issues dealing with the affirmative relief sought [or the defense], the trial court should redact any part of the privileged communication that does not relate to [those matters].").

[15] *See* TEX. R. CIV. P. 192.3(a), 194.2(b)(10); TEX. R. EVID. 509(e)(4), 510(d)(5); *In re Am. Optical Corp.*, 988 S.W.2d 711, 712 (Tex. 1998) (noting that discovery request is overbroad when not "tied to" particular subjects and time periods in dispute); *Coates*, 758 S.W.3d at 752-53 (explaining that plaintiff's "prior [personal] problems and attendant complaints of depression are distinct from the mental anguish she claims as a result of her injury" and that an "allegation of mental anguish or emotional distress [alone] does not place the party's mental condition in controversy").

writ of mandamus, direct the court of appeals to vacate its mandamus order, and instruct the trial court to conduct further proceedings to determine which parts of the records are available under each rule asserted.

_____

J. Brett Busby
Justice

**OPINION DELIVERED:** May 10, 2024